IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>v.<br><br>RODERICK BITSILLY,<br><br>        Defendant. | Case No. 22-CR-598-WJ |

## MR. BITSILLY'S SENTENCING MEMORANDUM

COMES NOW Defendant **RODERICK BITSILLY**, by and through his counsel, Sarah M. Gorman and Richelle Anderson, pursuant to 18 U.S.C. § 3553, Fed. R. Crim. P. 32, and D.N.M.LR-Cr. 32.C, respectfully submits this memorandum of law detailing why the factors set forth in 18 U.S.C. § 3553, and the ends of justice call for a sentence of 75 months, pursuant to Mr. Bitsilly's plea agreement. Given all of the facts and circumstances of this case, this sentence is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). As explained below, a sentence of 75 months, followed by a term of supervised release is sufficient to accomplish the statutory purposes of sentencing. This proposed sentence reflects the nature and circumstances of the offense, and Mr. Bitsilly's personal history and characteristics and is sufficient but not greater than necessary.

## I.     BACKGROUND[1]

Abuse, mental health challenges, and substance abuse. These have been the hallmark characteristics of Mr. Bitsilly's life. Mr. Bitsilly is Navajo and was born and raised on the Navajo reservation. However, at the young age of seven years old, he was forced to attend Chuska Boarding School and Tohatchi Boarding School. PSR ¶88. These schools were among hundreds of Federal Indian Boarding Schools, initiated to culturally assimilate Native Americans. These schools were riddled with physical and sexual abuse of the students, with over 973 deaths occurring at these schools.[2] In fact, last year President Joe Biden issued an apology for the government's role in running these schools,[3] and a report was issued by the Department of the Interior detailing the horrors of these schools.[4] Mr. Bitsilly suffered tremendously during the 10 years he was forced to attend these boarding schools and suffered significant physical and emotional abuse. This traumatic experience and such a young and formative age shaped his emotional and mental health for the rest of his life.

Additionally, and tragically, alcohol addiction was also a significant part of Mr. Bitsilly's life and his family from a young age. Mr. Bitsilly's father was an alcoholic and abused his mother. *See* PSR ¶89. His father abandoned Mr. Bitsilly's family when he was only six years old. Alcoholism affected all members of Mr. Bitsilly's family, with three of his siblings dying from alcohol abuse. Mr. Bitsilly himself began drinking at 12 years old and continued to do so to the point of homelessness for fifteen years. Mr. Bitsilly also suffered from severe bouts of

---

[1] All information presented is from Mr. Bitsilly's' PSR, and information provided by Mr. Bitsilly.
[2] *See* https://www.bia.gov/service/federal-indian-boarding-school-initiative.
[3] *See* https://www.npr.org/2024/10/26/nx-s1-5165427/biden-apologizes-for-governments-role-in-running-native-american-boarding-schools
[4] https://www.bia.gov/sites/default/files/media_document/doi_federal_indian_boarding_school_initiative_investigative_report_vii_final_508_compliant.pdf.

depression, leading to a suicide attempt when he was only 19 years old. All of these experiences have led Mr. Bitsilly to where he is today. However, with the help and support of his wife, Mr. Bitsilly has made serious changes in his life and remained sober.

Mr. Bitsilly accepts full responsibility for these offenses; however, this information is offered to the Court so that it can take into account Mr. Bitsilly's traumatic past and how that contributed to the plea agreement in the instant case. The past cannot be rewritten, but the Court can impose a sentence which takes into account these factors. The agreed upon sentence of 75 months is appropriate. Moreover, as a consequence of this conviction, Mr. Bitsilly will be required to register as a sex offender under New Mexico's Sex Offender Registration and Notification Act. Accordingly, to the extent the Court has concerns about safety following Mr. Bitsilly'eventual release from custody, the state registration requirements provide an additional layer of protection to the community.

## II. **A SENTENCE SUFFICIENT BUT NOT GREATER THAN NECESSARY**

Under *Kimbrough v. United States*, 552 U.S. at 85 (2007), the starting point for the Court is "to impose sentence sufficient, but not greater than necessary" to achieve the goals of sentencing. The Court must accurately calculate the guideline range, however the calculation of the guideline range first means only that the Court must resolve disputes about guideline facts and applications issues at the outset, not that the guideline range is necessarily the appropriate sentence or starting point. Under 18 USC Section 3553(a) a broad range of factors are to be considered, including the nature and circumstances of the offense and the history and characteristics of Mr. Bitsilly. Additionally, the Court is to consider the need for the sentence imposed to:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to

>provide just punishment for the offense;
>
>(B) to afford adequate deterrence to criminal conduct;
>
>(C) to protect the public from further crimes of the defendant; and
>
>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Upon, consideration of all of these factors, a sentence of five years and one day is appropriate and sufficient but not greater than necessary. The Court may arrive at this sentence based on the variances and/or departures set out below by Mr. Bitsilly.

### A. Guidelines Calculation

Mr. Bitsilly does not dispute the calculation of the guidelines within his PSR. *See* PSR ¶¶ 28-52. However, as agreed to by all parties pursuant to Mr. Bitsilly's Rule 11(c)(1)(C) plea agreement, a 75-month sentence is the appropriate and just sentence in this case. In arriving at this sentence, Mr. Bitsilly asks the Court to consider that his criminal history is significantly overrepresented under USSG Section 4A1.3. All of the offenses that score criminal history points took place almost twenty years ago, with the oldest being 30 years old.

### B. Nature and Circumstances of the Offense

Mr. Bitsilly admitted to a detailed factual basis within his plea agreement, *see* Doc. 84, p. 4-5, and accepts responsibility for his actions. It is clear both from the alleged victims' accounts and from Mr. Bitsilly that his addiction to alcohol was a significant factor in these offenses. Mr. Bitsilly has taken steps to address his addiction and has been sober for over five years.

### C. History and Characteristics of Mr. Bitsilly

As detailed above Mr. Bitsilly's life has been incredibly difficult. He has suffered abuse and dealt with serious mental health and addiction challenges. However, since his release

4

from custody on this case, Mr. Bitsilly has performed incredibly well while on pre-trial release. Mr. Bitsilly initially released to La Pasada Halfway House and after following all conditions with no violations, he was allowed to move into his own apartment in Albuquerque. Mr. Bitsilly has worked consistently at Just Sprinklers, *see* PSR¶111, and has been a model employee. Mr. Bitsilly volunteers every weekend ministering to the homeless and has the support of his wife and other friends. *See* Exhibit.[5] Although it is difficult for those closest to Mr. Bitsilly to understand or acknowledge is guilt in these offenses, Mr. Bitsilly accepts full responsibility.

### D. Seriousness of the Offense, Respect for Law, Just Punishment

Although the actions taken by Mr. Bitsilly in committing these offenses were serious, they cannot be considered in a vacuum. Mr. Bitsilly arrived at that point through a combination of a disadvantaged upbringing, abuse, addiction and mental illness. The guidelines generally do not account for such behavior, which is why the Court may consider these matters under Section 3553(a) and vary downward. *See* Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?,* 89 Minn. L. Rev. 571, 590 (February 2005). The government focuses on Mr. Bitsilly's past actions, however, this section of 3553 also requires a consideration of Mr. Bitsilly's probable future conduct and the effect of the punishment might have on future conduct. A five year and one day is significant, since Mr. Bitsilly has never before suffered a criminal conviction. With this sentence of incarceration and supervised release to follow, if not deported, the balance of punishment and treatment can be reached. If deported, Mr. Bitsilly will seek treatment in France.

### E. Deterrence To Criminal Conduct and Protection of the Public

Although many may believe that lengthier sentences have a greater deterrent effect,

---

[5] Letters of Support

empirical research shows this to be untrue.  In fact, there is no evidence that increases in sentence length reduce crime through deterrence.  Current empirical research on general deterrence shows while certainty of punishment has a deterrent effect, "increases in severity of punishment do not yield significant (if any) marginal deterrent effects . . ."  Three National Academy of Science Panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."  Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

1. Mr. Bitsilly's Age Reduces the Risk of Recidivism

Mr. Bitsilly is 61-years old and has no previous convictions or arrests for any offenses of a sexual nature.  Generally, the "relationship between age and general criminal behavior has been widely researched, with findings universally demonstrating that as age increases, the likelihood of an individual offending decreases."[6] Specifically with regards to sex offenders, "recidivism rates are only 10% to 15% after 5 years[.]"[7] Relevant here, offenders "who only target

---

[6] Rebecca L. Crookes, et al., *Older Individuals Convicted of Sexual Offenses: A Literature Review*. J. Sexual Abuse, v. 34, 341–371 (2022) https://doi.org/10.1177/10790632211024244 (cited authority omitted).

[7] R. Karl Hanson, *Recidivism and Age, Follow-Up Data From 4,673 Sexual Offenders*. J. of Interpersonal Violence, v. 17, 1046, 1046-1062 (2002).

intrafamilial victims (incest offenders) have consistently lower recidivism risk than do other sexual offenders."[8] As indicated in the figures below, incidents of recidivism decrease as an offender's age increases.[9]



Figure 2: Recidivism Rates by Age Category



Figure 1: Age Distribution of Sexual Offenders

Recidivism is nearly non-existent for offenders in Mr. Bitsilly's age category, 60-69. In the Hanson study, "recidivists among the sexual offenders released after age 60 [accounted for] (5 of 131 or

---

[8] *Id.* at 1048.

[9] *Id.* at 1053-54.

7

3.8%)."[10] Additionally, the "average recidivism rate for the incest offenders (8%) was lower than the average recidivism risk for extrafamilial child molesters (19%) and rapists (17%)."[11] Accordingly, the data indicates that Mr. Bitsilly's increased age makes him less and less likely to re-offend.

    2.  <u>Other Risk-Factors Indicate Mr. Bitsilly is Not at Risk for Reoffending</u>

According to the research, the three most relevant risk factors linked to sex offender recidivism are (1) sex drive and/or deviant sexual interests, (2) low self-control, and (3) opportunity.[12] "Research on normal populations has found that male sexual drive declines steadily with age, although the reduction is relatively limited until after age 50," with "26% of men older than the age of 70" reporting "no sex drive."[13]

"The second major factor associated with sexual offending is low self-control or criminal lifestyle."[14] "Self-control increases dramatically from childhood to adulthood, and the age-related decline in almost all impulsive, risky behavior (*e.g.*, fast driving, substance abuse, theft, assault) suggests that self-control and constraint continue to develop well into the adult years."[15] Third and final, opportunities for sexually assaulting children increase in middle adulthood, with most offenders exploiting relationships of trust with known or related victims through friends or family.[16] This opportunity wanes as offenders age. Mr. Bitsilly is in his early sixties, which

---

[10] *Id*. at 1054.

[11] *Id*. at 1056.

[12] *Id*. at 1056-57.

[13] *Id*. at 1056.

[14] *Id*. at 1057.

[15] *Id*.

[16] *Id*.

8

research indicates is marked by lower sexual interest. At an older age, he is also more self-controlled and much less prone to impulsive and risky conduct.

### F. Rehabilitation in the Most Effective Manner and Sentences Available

Given Mr. Bitsilly's plea agreement, he will be serving a sentence of over six years. Generally, prison is not rehabilitative. Mr. Bitsilly will take advantage of all necessary treatment, counseling, therapy and educational opportunities available, however, "there is substantial evidence that prison, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism." *See Washington State Institute for Public Policy, Evidence-Based Policy Options to Reduce Further Prison Construction, Criminal Justice Costs, and Crime Rates*, http://www.wsipp.wa.gov/rptfiles/06-10-1201.pdf.

An appropriate sentence for Mr. Bitsilly, that takes into account available sentences and rehabilitation would be the minimum amount of incarceration, with a term of supervised release to follow with strict conditions for mental health and substance abuse treatment and counseling. Mr. Bitsilly's agreed upon sentence with supervised release to follow, meets these goals.

### G. Consideration of Unwarranted Disparities

Under this consideration, this Court must consider how similarly situated defendants are sentenced, however, uniformity for its own sake is no longer the goal of the sentencing system. *See Kimbrough*, 552 U.S. at 108 ("some departures from uniformity were a necessary cost of the remedy we adopted."). Accordingly, the Court must consider not only unwarranted sentencing disparities but also unwarranted similarities among defendants not similar situated. *See Gall v. United States*, 552 U.S. 38 (2007). This plays out where a defendant's personal characteristics, such as Mr. Bitsilly's, is in some way unique. *See United*

9

*States v. Zavala*, 300 F. App'x 792 (11th Cir. 2008). Mr. Bitsilly's personal characteristics are unique, both in his upbringing, disadvantages, mental health, and addiction. This Court must still consider Mr. Bitsilly as an individual and take into account his specific circumstances.

### III.    CONCLUSION

Mr. Bitsilly requests that the Court impose a sentence of 75 months, which is sufficient, but not greater than necessary to achieve this Court's sentencing goals.

Respectfully submitted,

*/s/ Sarah M. Gorman*
SARAH M. GORMAN
1201 Lomas NW, Suite A
Albuquerque, NM 87102
Phone: (505) 243-5442
Smgorman.law@gmail.com

*/s/ Richelle Anderson*
RICHELLE ANDERSON
The Law Office of Ryan J. Villa
5501 Eagle Rock Ave. NE Suite C2
Albuquerque, NM 87113
Phone: (505) 639-5709
Richelle@rjvlawfirm.com

### CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, I filed the foregoing electronically through the CM/ECF system, which caused counsel for the United States to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Sarah M. Gorman*
SARAH M. GORMAN